IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

## STATE OF TENNESSEE v. JOHN THOMAS BINGHAM

**Direct Appeal from the Circuit Court for Bedford County**
**No. 15245     Charles Lee, Judge**

---

**No. M2003-02548-CCA-R3-CD - Filed June 7, 2005**

---

A Bedford County jury convicted the defendant, John Thomas Bingham, of robbery, a Class C felony. Following a sentencing hearing, the trial court sentenced him as a Range I, standard offender to five years and six months in the Department of Correction. In this appeal, the defendant argues that the evidence is insufficient to support the conviction and that the trial court erred in sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, J.J., joined.

Hayley E. Fults, Shelbyville, Tennessee, (on appeal) and Richard Cawley (at trial) for the appellant, John Thomas Bingham.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; W. Michael McCown, District Attorney General; and Michael Randles and Ann Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

Kevin Taylor, the victim in this case, testified at trial that he was watching television at approximately 12:40 a.m. on the couch in his trailer on the evening of December 31, 2002, when Benny Lotty, Robert Pryor, and the defendant knocked on his door. After a brief visit, Taylor asked the three men to leave and went to sleep. Taylor stated that he was awaken shortly thereafter by the sound of something "prying at the door." He testified that, upon opening the door, the defendant and Pryor forced their way back into the trailer, armed with butcher knives. Taylor testified that he then grabbed a knife and fled to the nearby home of Robert Taylor ("Uncle Bay"), his uncle.

Uncle Bay testified that he accompanied Taylor back to the trailer and that Taylor was visibly nervous, excited, and scared. Taylor testified that, upon his return, he found his stereo "busted" in the yard, his grill thrown against his window, and he saw the defendant and Pryor carrying his television behind the trailer and over a fence. Uncle Bay also testified that "the stereo was laying on the sidewalk between the door and the window, and they was putting the television over the fence into the next trailer park." Upon seeing the defendant and Pryor carrying the television, Uncle Bay yelled, "[h]old it. I have got a gun," causing the defendant and Pryor to drop the television and leave.

David Stemper lived near Taylor in the trailer park. Stemper testified that he observed "two gentlemen pushing a large television over a fence." He stated that "you could hear them pushing it end over end near the rear of it to get it over the hump, near the back of the trailer."

Patrolman Cody King of the Shelbyville Police Department testified that, when he arrived, Taylor still appeared scared and upset. Patrolman King stated that he saw "[a] stereo on the sidewalk, outside of the front door [and] a TV across the fence in front of another trailer" and noticed that Taylor's window was "shattered." Patrolman King testified that, while the stereo was broken, "[he] didn't see anything broken on [the television]." Patrolman King also acknowledged that he did not find any knives during the investigation.

Patrolman Billy Smith of the Shelbyville Police Department arrived to the scene at roughly the same time as Patrolman King. Patrolman Smith also testified that "[t]here was a stereo system laying in the front yard and a TV across the chain link fence." After Taylor gave a description of the defendant and Pryor, Patrolman Smith and other officers searched the surrounding area. Patrolman Smith testified that, when the defendant and Pryor were located and arrested, the defendant stated, "they ripped us in a drug deal" and that "they deserved what they got."

Patrolman Rod Lewis Stacy of the Shelbyville Police Department was also present at the time the defendant and Pryor were arrested. Patrolman Stacy testified that the defendant asked what he was being arrested for and made the statements, "[t]hey deserved it" and "[t]hey shouldn't have screwed us on the drug deal."

Pryor testified that he and the defendant were attempting to trade Taylor some marijuana and money for cocaine the night of the offense. However, Pryor stated that, upon entering Taylor's trailer, a fight ensued and that he was robbed of his marijuana and money. Pryor testified that, out of anger, he threw a grill "through the window" and told the defendant that "[t]hese sons of bitches just robbed me. They took everything I had, pot and money." Pryor testified that Taylor then came out with a knife and that, after he and the defendant wrestled it away, Taylor ran down the street. Pryor stated that he then "went in and started breaking stuff." He stated:

> I grabbed the TV. I got [the defendant] to help me grab the TV. We threw it outside. I went outside and stomped the stereo a couple of times. I kicked the TV a couple of times.

. . . .

I didn't want to steal nothing. I wanted to break a lot of stuff.

. . . .

Because they had stole my pot and my money.

The defendant corroborated Pryor's testimony at trial, adding that "[w]e slung [the TV] over a fence, jumped over the fence and started kicking it. Just kicking the heck out of it, trying to break it." The defendant also testified that, when Taylor and Uncle Bay returned to the trailer, "[w]e turned around and walked off. We [were] still mad. . . . Somebody could have got shot over it."

At the conclusion of the evidence, the jury found the defendant guilty of robbery. At the sentencing hearing, Laura Prosser, a probation and parole officer with the Board of Probation and Parole, testified that she prepared the presentence report on the defendant. Her research revealed that the defendant had thirty-seven misdemeanor convictions and no felony convictions. Prosser also testified that the defendant was on probation at the time he committed this offense. The defendant admitted that the misdemeanor convictions reflected in the presentence report were correct and that he was on probation at the time this offense was committed. At the conclusion of the hearing, the Court stated:

> Upon review of all of the potential mitigating factors that may be present, the Court does not find there to be any mitigating factors.
> The Court finds that the State has carried it's burden of proof in demonstrating that the defendant has a previous history of criminal convictions that are more than necessary than those required to establish the appropriate range.
> The Court places considerable emphasis upon that.
> [T]he State could be heard to argue but I think for a different reason, that this was an offense that was committed for excitement or pleasure.
> . . . .
> [W]hat these defendants were doing was for the excitement, as [the defendant] says today, the retribution associated with the destruction of their property.
> . . . .
> The Court also finds that the defendant has a history of unwillingness to comply with conditions of release in the community.

After his motion for new trial was denied, the defendant filed this appeal.

**Analysis**

**I. Sufficiency of the Evidence**

The defendant's first argument on appeal is that the evidence is insufficient to sustain the conviction for robbery. Specifically, he argues that the victim's testimony was unbelievable in its

entirety because the jury discounted the element of the victim's testimony that the defendant employed a deadly weapon.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.").

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). A guilty verdict removes the presumption of innocence so that, on appeal, a convicted criminal defendant who challenges the sufficiency of the evidence bears the burden of demonstrating why the evidence is insufficient to support the verdict. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); Carruthers, 35 S.W.3d at 557-58; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We will not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are to be resolved by the trier of fact. See Evans, 108 S.W.3d at 236; State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The victim testified that the defendant forcibly entered his home. Three witnesses testified to seeing the defendant in the act of removing the victim's television set, from which the jury could infer the defendant's intent to deprive the owner. Viewing the evidence in a light most favorable to the State, the evidence supports the defendant's conviction.

The defendant's argument on appeal is that the evidence is insufficient because the victim's property was not found on the defendant at the time of his arrest and that the victim's testimony is unbelievable. The defendant asserts that the jury, by discrediting one element of the victim's testimony, could not have believed the victim. As previously stated, questions concerning the credibility of witnesses and factual discrepancies within the evidence are reserved for the trier of fact. The jury is free to accredit the testimony of a witness in its entirety or in part. Obviously by their verdict, the jury accredited the elements of the victim's testimony that supported a conviction for robbery. We conclude that the evidence is sufficient to support this finding. Consequently, this issue is without merit.

## II. Sentencing

The defendant, relying on <u>Blakely v. Washington</u>, 542 U.S. - - - -, 124 S. Ct. 2531 (2004), contends that the trial court erred when it enhanced his sentence above the presumptive minimum.[1] At the sentencing hearing, the trial court found that, pursuant to Tennessee Code Annotated section 40-35-114, three enhancement factors applied: (1) the defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range; (2) the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (3) the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. The trial court found no applicable mitigating factors.

The State argues that the defendant has waived any <u>Blakely</u> issues for failure to present the argument at trial or in his motion for new trial. We agree. In the recent decision <u>State v. Gomez</u>, - - - S.W.3d - - - -, No. M2002-01209-SC-R11-CD (Tenn. April 15, 2005), the Tennessee Supreme Court announced that Tennessee's sentencing structure does not violate the Sixth Amendment. <u>Id.</u> at - - - -. The court also determined that <u>Blakely</u> did not establish a new rule of law. <u>Id.</u> at - - - -. As such, the defendant, who has failed to assert this issue prior to appeal, has effectively waived the issue.

Furthermore, the <u>Gomez</u> court concluded that a Tennessee trial judge's discretionary application of sentence enhancement factors absent an admission or jury finding does not amount to plain error. <u>Id.</u> at - - - -. In accordance with this reasoning, we conclude that the defendant's <u>Blakely</u> challenge does not necessitate the reversal of his sentence.

## Conclusion

We affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE

---

[1] The defendant received a sentence of five years and six months. The sentencing range, as a Range I, standard offender for a Class C felony, is not less than three nor more than six years. Tenn. Code Ann. § 40-35-112(a)(3).